**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-02345-MSK-CBS**

**CAMILLE LAFONT,**

    **Plaintiff,**

**v.**

**COLORADO ATHLETIC CLUB;
WELLBRIDGE CLUB MANAGEMENT, LLC;
STARMARK HOLDINGS, LLC; and
DOES 1-25,**

    **Defendants.**

---

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendants', Colorado Athletic Club, Wellbridge Club Management, LLC, and Starmark Holdings, LLC, Motion for Summary Judgment (**#38**), the Plaintiff's, Camille Lafont, Response (**#39**), and the Defendants' Reply (**#40**).

## ISSUES PRESENTED AND JURISDICTION

Ms. Lafont asserts three claims related to her termination from the Colorado Athletic Club in Boulder, Colorado: (1) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 (CADA); (2) sexual orientation discrimination in violation of CADA; and (3) retaliation in violation of Title VII and CADA. The Defendants move for summary judgment on all three claims.

The Court has subject matter jurisdiction over all of Ms. Lafont's federal claims arising under the laws of the United States. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006). The Court exercises supplemental jurisdiction over Ms. Lafont's CADA claims pursuant to 28 U.S.C. § 1367.

## **MATERIAL FACTS**

Based upon the evidence submitted by the parties, construed in the light most favorable to Ms. Lafont, a summary of the material facts follows. Additional evidence and facts will be discussed in more detail in the Court's analysis.

Wellbridge Club Management, LLC ("Wellbridge") owns and manages athletic clubs across the United States. Among other clubs in Colorado, Wellbridge owns and manages the Colorado Athletic Club in Boulder, Colorado ("CAC-Boulder") using the tradename "Colorado Athletic Club." Starmark Holdings, LLC ("Starmark") is a member and manager of Wellbridge.

Ms. Lafont is female and identifies as homosexual. Ms. Lafont started working in the housekeeping department at the CAC-Boulder in March 2011 as a part-time employee. Shortly thereafter she sought full-time status in order to receive benefits. In February 2012, as Ms. Lafont approached qualification for benefits, Mike Heldt was promoted and became Ms. Lafont's direct supervisor. Mr. Heldt began reducing Ms. Lafont's shifts and carving back her hours. As a result, she fell just below the number of hours she needed to qualify for benefits.

Upon his promotion, Mr. Heldt also micromanaged and criticized Ms. Lafont's work. Ms. Lafont attributed Mr. Heldt's behavior to his "misogynist point of view towards women" and his belief that "the opinions of a woman weren't really relevant." She stated that he regularly dismissed her suggestions, made sexist comments, and was "ill-tempered" towards her. In contrast, Mr. Heldt accepted the recommendations of male employees, formed relationships

2

with them, and expressed interest in their lives.  Ms. Lafont thus believed that Mr. Heldt's approval was "contingent upon one's participation in the good-old-boys club."  Ms. Lafont admits that Mr. Heldt was at times "ill-tempered" with male employees as well.

Ms. Lafont also claims that Mr. Heldt discriminated against individuals identifying as homosexual. She contests that he contributed to a workplace environment in which employees "disparaged and mocked gay individuals."  To support this claim she relies largely on her subjective impressions of Mr. Heldt. The only specific instances she identifies are: (1) Mr. Heldt once stating to another employee that pop singer Justin Bieber "should just come out of the closet," and (2) that Mr. Heldt was aware of, but did not stop, a running joke between certain male employees who "called each other 'dear' in an effeminate way."

In May 2012, Ms. Lafont sent an email to Jill Shusterman, CAC-Boulder's General Manager, indicating that Ms. Lafont planned to file a complaint with the Colorado Civil Rights Division (CCRD) on the basis that Mr. Heldt created a work environment that was "hostile for women and members of the LGBT community," and which "substantially interfered with [Ms. Lafont's] right to advance and obtain advantageous positions" within CAC-Boulder.  Ms. Shusterman forwarded this email to Terri Hebdon, Wellbridge's Director of Human Resources.

Wellbridge retained Mountain States Employers Council, Inc. (MSEC) to investigate Ms. Lafont's claims. After its investigation, MSEC opined that Ms. Lafont's allegations regarding discrimination and harassment based on sexual orientation or gender were unsubstantiated.  Ms. Shusterman and Ms. Hebdon accepted this conclusion.

On August 9, 2012, Ms. Lafont left a voicemail for Ms. Shusterman, which Ms. Shusterman perceived as unprofessional and threatening.  Ms. Shusterman brought it to Ms. Hebdon's attention, and together with Ms. Hebdon and Mr. Heldt, Ms. Shusterman issued a

performance improvement plan (PIP) to Ms. Lafont on August 10. The PIP indicated that should Ms. Lafont fail to meet expectations, further disciplinary action would ensue. Ms. Lafont signed the PIP, but added this note: "The above referenced allegations are w[ith]out merit and [this] is a retaliatory action subsequent to and in response to litigation pending against the organization."

In the summer of 2012, Jessica Medina began working in the housekeeping department. Ms. Medina developed a "hostile and very indifferent attitude" towards Ms. Lafont, which Ms. Lafont attributed to comments Mr. Heldt made to Ms. Medina.[1] Tension between Ms. Medina and Ms. Lafont culminated on February 14, 2013. When Ms. Medina arrived for her shift, the two women got into a heated verbal exchange. At the end of Ms. Lafont's shift, she was walking down a hallway with her fiancée, Bianca Becker, who was also a CAC-Boulder employee. Ms. Medina walked towards them and forced a cart she was pushing between the two, while "shoulder checking" Ms. Lafont. Ms. Medina and Ms. Lafont again exchanged words, and Ms. Medina hit Ms. Lafont. Ms. Becker intervened and a physical fight began in the laundry room and ended in the facility's lobby. Ms. Lafont concedes involvement in the fight, but insists that her participation was limited to separating Ms. Medina and Ms. Becker. At least part of the altercation was recorded by the CAC-Boulder's video surveillance system, and the Boulder Police Department came to the scene.

Ms. Lafont, Ms. Becker, and Ms. Medina were suspended pending investigation of the incident. Ms. Shusterman and another human resources representative interviewed Ms. Lafont and Ms. Medina, spoke to responding police officers, and reviewed the surveillance footage. Ultimately, Ms. Shusterman and Ms. Hebdon concluded that the behavior of the women violated

---

[1] Essentially, Ms. Lafont claims that Mr. Heldt told Ms. Medina that Ms. Lafont criticized her. And she claims Mr. Heldt told Ms. Medina that he "could not control" Ms. Lafont, and indicated that Ms. Medina could lose her job as a result of Ms. Lafont's actions.

Wellbridge's workplace violence policy and terminated all three. Ms. Lafont's termination was effective March 1, 2013.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56 permits summary judgment only when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). A factual dispute is "genuine" if the evidence presented is so contradictory that, presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. The Court analyzes the evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Substantive law determines the elements to be proven on each claim or defense, identifies the standard of proof and determines which party bears that burden. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). Where, as here, the moving party does not bear the burden of proof at trial, it must point to an absence of sufficient evidence to establish the non-movant's claims. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 884-85 (1990). The non-moving party must respond by identifying sufficient and competent evidence revealing a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). If the non-moving party fails to do so, summary judgment is warranted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## ANALYSIS

**A. Starmark and Colorado Athletic Club**

5

Ordinarily to state a *prima facie* Title VII claim, a claimant must demonstrate an employer-employee relationship with each named defendant. *See Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1027-28 (10th Cir. 1996). There is no dispute that Wellbridge employed Ms. Lafont, but Colorado Athletic Club and Starmark contend that Ms. Lafont cannot establish an employee-employer relationship. Ms. Lafont responds that Colorado Athletic Club, Starmark, and Wellbridge are jointly liable as an integrated enterprise under the single-employer test. *See Bristol v. Board of County Com'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002).

The single-employer test requires "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify a belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1070 (10th Cir. 1998) (internal quotations omitted). The Court's primary focus is the control of labor relations — for an affiliated corporation to be liable it must control the day-to-day employment decisions of the immediate employer. *See id.*

Ms. Lafont's evidence in support of the single-employer status is limited. She states generally that Starmark is a member and manager of Wellbridge, but she presents no evidence or factual detail to support the assertion. To the contrary, Defendants' evidence shows that Wellbridge unilaterally controlled day-to-day employment decisions. For example, personnel notices to Ms. Lafont and Mr. Heldt were authored by Wellbridge. In addition, Ms. Hebdon and Ms. Shusterman, both Wellbridge employees, submitted affidavits stating that they made the final decisions to terminate Ms. Lafont, Ms. Becker, and Ms. Medina.

Ms. Lafont's argument that Colorado Athletic Club should be considered her employer is based on her own statement that "Wellbridge exercises complete control" over it. But she admits

6

that Colorado Athletic Club is the registered trade name under which Wellbridge conducts business in the state. *See* C.R.S. § 7-71-104. A tradename is the name or symbol used to identify a company, not an entity capable of having employees. *See* Black's Law Dictionary (10th ed. 2014), "tradename."

Ms. Lafont's statements are conclusory and unsupported by evidence sufficient to make a *prima facie* showing that Starmark and Colorado Athletic Club employed her or to establish that together with Wellbridge, they are an integrated enterprise under the single-employer test. Starmark and Colorado Athletic Club are entitled to entry of summary judgment in their favor on all claims.

### B. Discrimination Based on Sex

Under Title VII it is unlawful for an employer to discriminate based on race, color, religion, sex, or national origin. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Title VII claims are analyzed under the burden-shifting framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). A plaintiff bears the initial burden to establish a *prima facie* case for discrimination. *Id.* Once a *prima facie* case is established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.*

To establish a *prima facie* case under either Title VII or CADA, a plaintiff must provide evidence that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was treated less favorably than others who are not members of the protected class, giving rise to an inference of discrimination.

*Khalik*, 671 F.3d at 1192; *Colorado Civil Rights Commission v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997). Wellbridge does not dispute that Ms. Lafont is a member of a protected class, was qualified for her position, and suffered an adverse employment action, namely, termination.[2] The only disputed issue is whether Ms. Lafont presented sufficient evidence to establish circumstances giving rise to an inference of unlawful discrimination.

A plaintiff typically demonstrates this element with indirect or circumstantial evidence. *See Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011); *see also Luke v. Hospital Shared Servs., Inc.*, 513 Fed. App'x 765, 765-66 (10th Cir., March 20, 2013). For example, a plaintiff might identify discriminatory remarks made by the decision-maker, systematic reassignment of her job duties to others, or, even more generally, a suspicious series of events. *Plotke v. White,* 405 F.3d 1092, 1101 (10th Cir. 2005). Or a plaintiff might present evidence that similarly situated employees not of the protected class were treated differently. *Luster*, 667 F.3d at 1095. Ms. Lafont's burden at this stage is relatively light; indeed, *Plotke* describes it as "*de minimis*." 405 F.3d at 1101.

---

[2] To the extent that Ms. Lafont's claim is premised on any other potential adverse employment actions, Wellbridge disputes characterization of such other actions as materially adverse. Particularly, the evidentiary record shows that Ms. Lafont's hours were reduced and she was placed on a performance improvement plan. To qualify as an adverse employment action, "the action must amount to 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . causing a significant change in benefits.'" *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). An employee's placement on a "performance improvement plan" is not alone adverse employment action. *Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1224 (10th Cir. 2006). And although Ms. Lafont does not expressly argue that Mr. Heldt's reduction in her work hours also constituted adverse action, to the extent this argument is implied she offers no evidence, other than self-serving assertions, that her hours were reduced to the degree necessary to constitute a significant change. *See, e.g., Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 636 (10th Cir. 2012) (evidence offered by employee in furtherance of her argument that she suffered an adverse action was insufficient); *Robinson v. Cavalry Portfolio Servs., LLC*, 365 Fed. App'x 104, 116-18 (10th Cir. February 10, 2010) (employee's contentions that the failure to promote her and issuing her less favorable client accounts were sufficient to infer materially adverse action).

The Court has some doubt that Ms. Lafont's presentation meets even this minimal standard. Her evidence of discrimination consists of allegations that Mr. Heldt displayed a hostile attitude towards her, gave her unfounded criticism, cut her hours, and pitted other employees against her. She states that Mr. Heldt was prejudiced against women, as evidenced by his favorable treatment of male employees, hiring choices, and disparaging comments. Her Response to Defendants' Motion for Summary Judgment simply asks the Court to examine the totality of minor incidents to infer discrimination. She does not, for instance, identify male co-workers who committed like infractions but were not similarly punished,[3] nor does she dispute that Wellbridge's policy expressly prohibits fighting amongst employees.

Moreover, although she cites Mr. Heldt's behavior as evincing a discriminatory motive, Mr. Heldt was not responsible for Ms. Lafont's termination. *Cf. Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (isolated comments by a supervisor uninvolved in the challenged adverse termination are insufficient to show discriminatory animus). It is undisputed that Ms. Shusterman and Ms. Hebdon investigated the altercation and terminated Ms. Lafont. Ms. Lafont offers no evidence to suggest that either woman harbored a discriminatory animus toward females. *See Tomsic v. State Farm Mut. Auto Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996).

Assuming, however, that Ms. Lafont has shown sufficient indicia of discrimination, her claim fails on the second and third *McDonnell Douglas* steps. Wellbridge offered a legitimate, nondiscriminatory reason for her termination — involvement in a physical fight in violation of

---

[3] Ms. Lafont's Response includes a passing comment that "Hugo Gutierrez was involved in the same altercation trying to stop the fight like Lafont, but was not disciplined." She does not cite to any record support for the contention, leaving the Court uncertain as to who Mr. Gutierrez is or the extent of his involvement in the incident. This single, unsupported comment is insufficient to carry Ms. Lafont's burden to come forward with evidence creating a genuine dispute of fact. In any event, there is no question that Ms. Lafont provoked Ms. Medina before the fight, thus, there is no indication that Mr. Gutierrez is truly similarly-situated to Ms. Lafont.

its employee policies. *See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007). Wellbridge specifically directs the Court to its employee handbook, which outlines disciplinary actions for various types of employee misconduct. As relevant here, an employee who commits a "Class A" violation (conduct such as "assault; attempted assault or other threats of violence; battery; insubordination or other disrespectful conduct; abusive language or behavior which is disruptive in the work place") may be "immediate[ly] dismissed without prior warning."

Ms. Lafont must therefore come forward with evidence sufficient to demonstrate that this reason is pretextual. She may do so with evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason, such that a reasonable trier of fact could rationally conclude that the proffered reason is insincere. *Plotke*, 405 F.3d at 1102. For example, an employee might offer evidence showing the employer's reason for the adverse action was contrary to a written company policy or company practice. *See id.*; *accord Kendrick v. Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Ms. Lafont offers no such evidence. She does not deny her involvement in the altercation with Ms. Medina. She contends that she interceded only to break up the fight between Ms. Medina and Ms. Becker, but her testimony suggests otherwise. After Ms. Medina bumped Ms. Lafont, Ms. Medina asked if Ms. Lafont "had a problem with her." Rather than ignore Ms. Medina, Ms. Lafont provoked her by responding that she did have a problem with Ms. Medina "shoulder checking" her. When Ms. Medina retorted that Ms. Lafont had been "telling on [Ms. Medina] to Mike Heldt," Ms. Lafont again escalated the confrontation, turning to Ms. Medina and "h[olding] my hand up to my eyes" — gesturing as if to call Ms. Medina a crybaby — and stating "you've been responding to him? You've been telling him about us? Well, good for

10

you." Regardless of whether Ms. Lafont was an aggressor or not, such behavior demonstrates active participation in the verbal sparring and resulting physical altercation.

Ms. Lafont likewise presents no evidence that the decision to terminate her employment was contrary to Wellbridge's written policies or company practice. She offers only a conclusory and unsupported assertion that another employee involved in the fight was not terminated. It is undisputed that both of the other two primary participants in the fight were terminated. Nor is there evidence that any employees involved in similar altercations were not terminated; in fact, Wellbridge offers evidence that a male employee from another club was terminated for involvement in a fight.

Even viewed in the light most favorable to Ms. Lafont, the evidence does not permit a conclusion by a reasonable jury that Wellbridge's proffered reason for her termination was a pretext for sex discrimination. Accordingly, her claims for sex discrimination cannot survive summary judgment.

### C. Discrimination Based on Sexual Orientation

Although not expressly unlawful under Title VII, sexual orientation discrimination is actionable under CADA. C.R.S. § 24-34-402(1)(a); *see Larson v. United Air Lines*, 482 344, 351. CADA claims are examined under the same legal standards as Title VII claims. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n. 11 (10th Cir. 2010); *Colorado Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997). Thus, Ms. Lafont must first present a *prima facie* case by pleading the same four elements enumerated above. *See Khalik*, 671 F.3d at 1192.

Wellbridge does not dispute that Ms. Lafont: (1) identifies as homosexual; (2) was qualified for the position she held; and (3) suffered an adverse employment action —

termination. Wellbridge again asserts that Ms. Lafont cannot establish circumstances giving rise to an inference of discrimination.

Even drawing all inferences in favor of Ms. Lafont, the Court is unable to find that she has presented sufficient evidence demonstrating circumstances giving rise to discrimination. Ms. Lafont's claim again relies on Mr. Heldt's words and actions, and consists primarily of comments that Ms. Lafont construed as disparaging gay men. Ms. Lafont offers no evidence that she ever heard Mr. Heldt make any outwardly derogatory to homosexuals, she interprets his dislike for President Obama "because he is a Democrat" as a veiled remark disapproving of homosexuality. However "distasteful" these remarks may be, there is "no link between them and the decision" to terminate Ms. Lafont . *See Larson*, 482 Fed. App'x at 352. Moreover, and for the same reasons relied upon by the Court above, Ms. Lafont fails to establish that Wellbridge's nondiscriminatory reason for her termination — the fight — was pretextual.

The Court therefore determines that there is insufficient evidence from which a reasonable fact-finder could conclude that Ms. Lafont has demonstrated a genuine dispute of material fact with regard to her claim for sexual orientation discrimination.

**D. Retaliation**

Like discrimination claims, retaliation claims are analyzed under *McDonnell Douglas*. *See Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998). Once, and if, the plaintiff presents a *prima facie* case for retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse actions. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). The burden then returns to the plaintiff to demonstrate pretext by showing the proffered reason is so inconsistent, implausible, or incoherent that it is not

reasonably believable. *Id.*; *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1120 (10th Cir. 2000).

Here, Ms. Lafont contends that the PIP and her termination were in retaliation for her discrimination complaint. And she contends that Mr. Heldt retaliated against her through his campaign of harassment and by fostering a hostile workplace.

### 1. Termination and the Performance Improvement Plan

To establish a *prima facie* case for retaliation based on adverse employment action, an employee must present evidence establishing that (1) she engaged in protected activity; (2) her employer took a materially adverse action against her; and (3) a causal connection between the protected activity and the adverse action exists. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211-12 (10th Cir. 2008).

There is no dispute that Ms. Lafont has satisfied the first element. That is, in or about May 2012, Ms. Lafont informed Ms. Shusterman of her intention to file a complaint with the CCRD concerning "the work environment at CAC [which is] hostile for women and members of the LGBT community." Such conduct is undisputedly protected activity.[4]

The second element of the *prima facie* case requires proof that a reasonable employee would have found the challenged action materially adverse. *See Somoza*, 513 F.3d at 1213-14. "Materially adverse action" is that which produces some injury or harm, or an act that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). Termination constitutes adverse action for purposes of retaliation, and Wellbridge does not dispute this.

---

[4] "Opposition to an employer's conduct is protected [by Title VII's retaliation provision] only if it is opposition to a practice made an unlawful employment practice by Title VII," like, as relevant here, gender discrimination. *See Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182, 1188 (10th Cir. 2002) (internal quotations omitted); *see also Larson v. United Air Lines*, 482 Fed. App'x 344, 351 (10th Cir. 2012).

There is some dispute, however, regarding whether Ms. Lafont presented evidence of any other adverse actions supporting a retaliation claim: specifically, whether issuance of the PIP was likewise a materially adverse action. The Court will assume for the purposes of analysis, that issuance of the PIP was a materially adverse action.

Having found (or assumed) sufficient evidence of the first two elements of a *prima facie* case, the Court turns to the third — whether Ms. Lafont established a causal connection between the protected action and the adverse acts. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202-03 (10th Cir. 2006). Although a plaintiff may sometimes rely solely on temporal proximity to establish a causal connection, unless the adverse action is very close in time to the protected activity, the plaintiff must offer evidence beyond temporal proximity. *See Fye v. Okla. Corp. Com'n*, 516 F. 3d 1217, 1288 (10th Cir. 2008); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). An adverse action occurring more than three months after the protected activity, for example, is not entitled to a presumption of causation. *See Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007).

Ms. Lafont's termination occurred some ten months after her complaint to the CCRD and the EEOC, preventing Ms. Lafont from showing a causal connection between her protected activity and her termination solely via temporal proximity. And Ms. Lafont does not offer any other evidence to suggest that her termination was a result of her protected conduct.[5] As to the PIP, Ms. Lafont first informed Ms. Shusterman of her intention to file a complaint with the CCRD on or about May 24, 2012. Ms. Shusterman issued the PIP to Ms. Lafont on or about August 10, 2012, approximately 78 days later. In *Meiners v. Univ. of Kansas*, the court

---

[5] Ms. Lafont claims that Mr. Heldt's actions all but ensured that the fight would occur. But the evidence demonstrates that Ms. Lafont had multiple opportunities to simply ignore Ms. Medina's provocations and/or to report them to Wellbridge officials.

14

suggested that protected conduct and an adverse action separated by at least 67 days were "probably too far apart" to satisfy the causation element. 359 F.3d 1222, 1231 (10th Cir. 2004).

Nevertheless, Ms. Lafont asks the Court to find, based on Mr. Heldt's continued retaliatory conduct following her protected activity, that she has established a pattern of retaliatory conduct ultimately culminating in the PIP and termination. The Court will therefore assume, without finding, that Ms. Lafont can establish a causal connection for purposes of a *prima facie* case and turn to the second and third steps of the *McDonnell Douglas* analysis.

Wellbridge asserts a legitimate, nondiscriminatory reason for issuing the PIP — that Ms. Lafont violated employee policies. Specifically, Wellbridge cited a voicemail left by Ms. Lafont for Ms. Shusterman on or about August 10, 2012.[6] The voicemail was in regard to a note posted on a bulletin board requesting that Ms. Lafont and Ms. Becker pay a tab they owed to CAC-Boulder's café. In the voicemail Ms. Lafont stated:

> As far as I know, it's probably something very small; but I don't want that to occur anymore. And I – I hope that I'm making myself clear. If I owe a tab to any department at CAC, anybody from CAC can come and make a comment to me personally; and, of course, I'm going to take care of it. Unprofessional, uncalled for, don't do it again, don't let any of your staff do it again. I hope I've made myself very clear. Thank you.

Ms. Shusterman reported to Wellbridge's director of Human Resources, Ms. Hebdon, that she felt threatened by "Ms. Lafont's aggressive tone and condescending demeanor." She believed it violated Wellbridge policies prohibiting "threats of violence . . . insubordination or other disrespectful conduct, abusive language or behavior that is disruptive in the workplace," and on that basis issued the PIP to Ms. Lafont. The Court finds that this is a legitimate,

---

[6] The voicemail was not the only allegation of inappropriate or unprofessional conduct by Ms. Lafont. The record contains evidence of at least one instance in which Ms. Lafont admitted to calling a co-worker a derogatory name when he asked her to perform a task.

15

nondiscriminatory reason for issuing the PIP. Likewise, as discussed above, Wellbridge presented a nondiscriminatory reason for Ms. Lafont's termination.

Ms. Lafont has not proffered any evidence suggesting that Wellbridge's reason for issuing the PIP was pretext, such as it is implausible, inconsistent, or contradictory. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). She does not contest that she left the voicemail. *See Plotke*, 405 F.3d at 1102. Indeed, Ms. Lafont's Response makes no argument that the PIP was issued in retaliation. Accordingly, Ms. Lafont cannot sufficiently demonstrate a claim for retaliation based on her termination or the PIP.

### 2. Workplace Harassment

To establish a claim for retaliatory harassment, Ms. Lafont must show that Wellbridge fostered a hostile work environment that was sufficiently severe as to qualify as a materially adverse action. *Bertsch v. Overstock*, 684 F.3d 1023, 1028-29 (10th Cir. 2012); *McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006). That is, she must show harassment which "permeated [her workplace] with retaliatory intimidation, ridicule, and insult," and was orchestrated or encouraged by a manager or supervisor. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998). She also must offer evidence of causation — that the harassment was the result of her engaging in protected activity. *Gunnell*, 152 F.3d at 1262-63. She may do so with temporal proximity or indirect evidence, but there must be some identifiable record support for a finding that the harassment was perpetrated with an intentional retaliatory motive. *Id.* at 1263.

Ms. Lafont's retaliation claim focuses almost exclusively on Mr. Heldt's poor treatment of female employees and those identifying as homosexual. For example, she points to a time when Mr. Heldt dismissed a suggestion she made by commenting that talking to Ms. Lafont was

like "trying to talk to his ex-wife." She claims that general statements by Mr. Heldt like, "males are easier to deal with and they're more rational," further demonstrate his prejudice. According to Ms. Lafont, employees openly "disparaged and mocked gay individuals" and Mr. Heldt did not discourage this practice. Ms. Lafont again references a joke between male employees in which they referred to each other as "Dear," while making effeminate gestures, and she points to an incident where a male employee expressed discomfort and frustration as to the number of gay men in the locker room. Finally, Ms. Lafont contends that when she and Ms. Becker became engaged Mr. Heldt treated Ms. Becker disrespectfully, though she admits Mr. Heldt never directly commented about their relationship.

Ms. Lafont characterizes Mr. Heldt's role as one in which he fostered additional harassment by telling her coworkers that Ms. Lafont criticized them. She offers into evidence a police report from the fight, in which Ms. Medina stated that her hostility towards Ms. Lafont derived from Mr. Heldt's indication that Ms. Lafont criticized her. Ms. Lafont also offers self-serving statements that two other co-workers told her that Mr. Heldt made similar comments to them.[7]

Taken as true, and viewed in the light most favorable to Ms. Lafont, this evidence is insufficient to establish a materially adverse action. "[C]ampaigns of hostility and harassment directed against plaintiffs, whether by co-workers or by supervisors, are insufficient to establish adverse employment action." *Gunnell*, 152 F.3d at 1264. For example, a scenario in which an employer yelled at an employee and directed other employees to "ignore and spy on" the employee was, alone, not enough to demonstrate material adverse action. *See Gunnell*, 152 F.3d

---

[7] The Court notes that some of this evidence may be inadmissible, and therefore not "suitable grist for the summary judgment mill." *See Adams v. American Guarantee and Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000). Ms. Lafont has no direct knowledge regarding what Mr. Heldt may have told other employees and she offered no affidavits from these other employees.

at 1264 (*discussing Munday v. Waste Management of North Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997)). Nor is personal animus directed at a plaintiff sufficient to show retaliation. *See Gunnell*, 152 F.3d at 1264 (*discussing Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997)).

But even if the Court assumes that the harassment constitutued materially adverse employment action, Ms. Lafont has not presented evidence of causation; that is, she makes no showing that she was targeted for harassment because she engaged in protected activity. To the contrary, her evidence suggests that Mr. Heldt's "campaign of harassment" began when he was promoted, and much of the harassment Ms. Lafont complains of occurred prior to May 24, 2012, that date she informed Wellbridge that she intended to file a complaint with the CCRD.[8] To the extent Ms. Lafont implies that the harassment was amplified as a result of her engaging in protected activity, she offers no specific evidence to support this. The Court thus has no basis on which to infer that Mr. Heldt's conduct was in retaliation for Ms. Lafont's protected activity.

Even viewed in the light most favorable to Ms. Lafont, a reasonable fact-finder could not conclude that Ms. Lafont can demonstrate a *prima facie* case for retaliation, because she has not presented sufficient evidence that any adverse action was taken in retaliation for her engaging in protected activity. The Court therefore grants summary judgment in favor of Defendants on Ms. Lafont's retaliation claim.

## **CONCLUSION**

---

[8] Ms. Lafont does not specifically state that her internal complaint to human resources was protected activity, but if her affidavit so suggests, the Court finds that such actions qualify as protected conduct for purposes of a retaliation claim. The Court's analysis remains unchanged, however, as this protected conduct was in response to the complained of harassment, rather than the harassment being a response to the protected conduct.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment (**#38**) is **GRANTED**.  The Clerk shall enter judgment in favor of the Defendants and against the Plaintiff on all claims and close this case.

Dated this 26th day of August, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge